L. Joseph **GARR**, III, et al.,
Respondents/Cross–
Appellants,

v.

**COUNTRYWIDE HOME LOANS, INC.,**
Appellant/Cross–Respondent.

No. SC 85578.

Supreme Court of Missouri,
En Banc.

July 1, 2004.

Duane L. Coleman, St. Louis, MO, Richard L. Martin, Kansas City, MO, for Appellant/Cross–Respondent.

Kevin L. Fritz, St. Louis, MO, for Respondents/Cross–Appellants.

STEPHEN N. LIMBAUGH, JR., Judge.

Defendant Countrywide Home Loans, Inc. ["Countrywide"] appeals summary judgment entered in favor of plaintiffs L. Joseph Garr, III and Marianne C. Garr for violation of section 443.130, RSMo 2000. Countrywide appeals in part based on the alleged unconstitutionality of section 443.130; thus, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3. The judgment is reversed.

On March 18, 2002, the Garrs, husband and wife, who resided at 1417 Marlann Drive in Des Peres, Missouri, signed a promissory note in favor of Mortgage Resources, a mortgage lender, in the principal amount of $165,000.00. A deed of trust secured the note on the Garrs' residence. At some point before August 2002, Mortgage Resources assigned its interest in the promissory note and deed of trust to Countrywide, another mortgage lender that transacts business in Missouri but has its principal office in Calabasas, California. On August 2, 2002, the Garrs refinanced their home with another mortgage lender, Matrix Financial. Mr. Garr mailed the full payoff amount for the Garrs' promissory note, and Countrywide received the payment on August 8, 2002. Also on that date, Mr. Garr sent a letter via certified mail, return receipt requested to the attention of Countrywide's Payoff Processing Department in Plano, Texas. The letter stated:

> On August 2, 2002, we closed on our Marlann Drive home. On August 8, 2002, I confirmed via the Countrywide Automated Customer Service Line that our loan with Countrywide Home Loans was paid in full on August 8, 2002 and that an escrow balance of $60.84 would be refunded to me. We still have not received a Deed of Release to release the lien against our personal residence at 1417 Marlann Drive, Des Peres, Missouri 63131.

> We are demanding immediate release of the Deed of Trust against our Marlann Drive property. Enclosed is a check payable to your institution in the sum of $30.00 to cover the costs of filing and recording the Deed of Release re-

garding the transaction. Please deliver in hand to me evidence of the release of the Deed of Trust. In the event the Deed of Release has already been sent, please return my check to above listed address.

Countrywide's Payoff Processing department received Mr. Garr's letter and personal check for $30.00 on August 12, 2002. That same day, a California affiliate of Countrywide prepared the deed of release and an officer of Countrywide executed it. As Mr. Garr requested, the deed of release included a directive to the recorder of deeds to mail the recorded deed to the Garrs at their home address. Countrywide then mailed the letter and deed of release to the St. Louis County Recorder of Deeds for recording in the public real estate records, and it was recorded on August 26, 2002, which was the tenth business day following receipt of Mr. Garr's letter of August 8. On August 14, 2002, Countrywide returned Mr. Garr's $30.00 check to him explaining that his loan was paid in full and additional funds were unnecessary.

On September 3, 2002, the fifteenth business day following Mr. Garr's August 8 letter, Mr. Garr sent a second letter by regular mail to Countrywide's Payment Processing department in Plano, Texas. In this letter, Mr. Garr stated that he and Mrs. Garr were "seeking damages against Countrywide Home Loans as a result of its flagrant violation of Mo.Rev.Stat. sec. 443.130," a statute that authorizes penalties for failing to execute a sufficient deed of release within 15 days of satisfaction of the debt. Mr. Garr demanded that Countrywide "immediately tender" a check for $16,500.00 (the statutory penalty of 10% of the promissory note) and deliver a "sufficient deed of release" within ten days of the date of his letter or he would file suit against Countrywide. Then, on September 12, 2002, Countrywide's California affiliate mailed the Garrs a copy of the deed of release.

On November 13, 2002, the Garrs filed suit against Countrywide in the Circuit Court of St. Louis County seeking to recover the statutory penalty under section 443.130. After a hearing on cross-motions for summary judgment, the parties agreed to waive trial and submit the case for disposition on the motions and briefs filed. The trial court rendered its judgment in favor of the Garrs, but denied the Garrs' request for prejudgment interest and attorney's fees. Countrywide appealed to this Court, and the Garrs cross-appealed the trial court's denial of prejudgment interest.

■ Appeals from summary judgment are essentially reviewed *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This Court must address the legal consequences of the facts contained in the record and if, under those facts, the Garrs are not entitled to recover the penalty under section 443.130, the final judgment of the trial court must be reversed. *See Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

■ Countrywide first asserts that the trial court erred in granting judgment in favor of the Garrs because the Garrs' letter of August 8, 2002 did not sufficiently invoke section 443.130. That section states in pertinent part:

1. If any such person, thus receiving satisfaction, does not, within fifteen business days after request and tender of costs, deliver to the person making satisfaction a sufficient deed of release, such person shall forfeit to the party aggrieved ten percent upon the amount of the security instrument, absolutely, and any other damages such person may be

able to prove such person has sustained....

2. To qualify under this section, the mortgagor shall provide the request in the form of a demand letter to the mortgagee ... by certified mail, return receipt requested. The letter shall include good and sufficient evidence that the debt secured by the deed of trust was satisfied with good funds, and the expense of filing and recording the release was advanced.

■■■ The purpose of section 443.130 is to enforce the duty of the mortgagee to clear the mortgagor's title, so that the record is no longer encumbered. *Ong Building Corp. v. GMAC Mortgage Corp. of Pennsylvania,* 851 S.W.2d 54, 55 (Mo. App.1993). This statute is an enforcement mechanism for section 443.060.01, RSMo 2000, which requires a mortgagee to deliver a "sufficient deed of release of the security instrument" upon satisfaction of the instrument. *Id.* Section 443.130 is penal in nature, so it must be strictly construed. *See BCI Corp. v. Charlebois Constr. Co.,* 673 S.W.2d 774, 780 (Mo. banc 1984). Therefore, any demand letter purporting to invoke section 443.130 should closely track the language of the statute to place the mortgagee on notice that the statutory demand is being made. *See Lines v. Mercantile Bank, N.A.,* 70 S.W.3d 676, 679 (Mo.App.2002).

In this case, Countrywide asserts that the Garrs' letter did not place it on notice that section 443.130 was being invoked. This Court agrees. First, the Garrs demanded an *"immediate* release" of the deed of trust, rather than allowing for fifteen business days in which Countrywide could respond as allowed under the statute. In addition, the Garrs demanded that Countrywide *record* the deed of release, which is another action not required by the statute. Finally, reading the Garrs'

letter as a whole, nothing places Countrywide on notice that the Garrs are making a demand under section 443.130, whether directly, by reprinting, citing, or referencing, or otherwise.

The Garrs rely on *Martin v. STM Mortgage Co.,* 903 S.W.2d 548, 550 (Mo.App. 1995) for the proposition that the statutory demand need not consist of any particular form of words. Although that proposition is correct, in *Martin,* the demand letter apparently did indeed include a recitation of section 443.130 that certainly would have placed the mortgagee on notice that the statute was being invoked. Therefore, *Martin* is inapposite.

Because the August 8, 2002, letter did not sufficiently track the statutory requirements of section 443.130, the judgment is reversed, and Countrywide's remaining two points on appeal and the Garrs' cross-appeal need not be addressed.

WOLFF, BENTON, STITH and PRICE, JJ., concur.

TEITELMAN, J., dissents in separate opinion filed.

WHITE, C.J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent.

Section 443.130.2 provides for statutory penalty and must be strictly construed. A strict construction requires that courts "not engraft upon the statute provisions which do not appear in explicit words or by implication from other language in the statute." *State ex rel. Rogers v. Bd. of Police Commissioners of Kansas City,* 995 S.W.2d 1, 6 (Mo.App.1999). Section 443.130.2 requires only that a mortgagor send a demand letter to the mortgagee by certified mail, return receipt requested.

The only statutory requirements for the content of the demand letter are that it "include good and sufficient evidence that the debt secured by the deed of trust was satisfied with good funds" and that the mortgagor advance funds for "the expense of filing and recording the release...." Section 443.130.2. There are no other express or necessarily implied statutory requirements for the contents of the demand letter. "[N]o particular form of words is necessary for the demand; it is sufficient if it informs the mortgagee with reasonable certainty that an entry of satisfaction of the particular mortgage is requested." *Martin v. STM Mortgage Co.*, 903 S.W.2d 548, 550 (Mo.App.1995); 59 C.J.S. Mortgages, Section 474c (1949).

In this case, the Garrs' demand letter complied with all statutory requirements for a valid demand letter and reasonably informed Countrywide that the plaintiffs were requesting a deed of release under section 443.130. The Garrs sent the demand letter via certified mail, return receipt requested. In the letter, the Garrs requested a deed of release because the debt was satisfied. As expressly required by the statute and referenced in the demand letter, they enclosed funds for the expense of filing and recording the deed of release. Nonetheless, the majority concludes that Countrywide, a large, sophisticated mortgage lender, had no notice that the Garrs were invoking the Missouri statute that enforces a mortgagee's right to a deed of release upon satisfaction of the mortgage.

In support of its conclusion, the majority identifies three aspects of the demand letter that prevented Countrywide from being put on notice that the Garrs were invoking section 443.130. First, the majority argues that the demand letter is deficient because the plaintiffs requested an "immediate release" of the deed of trust

rather than allowing Countrywide fifteen business days to respond. That the Garrs requested an "immediate release" is irrelevant. The only relevant factor is that they demanded a deed of release because the debt was satisfied. The fifteen-day time period in section 443.130.1 is nothing more than the time in which a mortgagee has to provide a deed of release pursuant to a demand letter. It does not constitute a necessary citation requirement for a valid demand letter. The statute does not, either explicitly or implicitly, require citation to the fifteen-day time limit in order for a demand letter to be effective.

Second, the majority argues that the plaintiffs demanded that Countrywide record the deed of release and, therefore, demanded an action not required by the statute. Even if this characterization of the demand letter is correct, requesting an action not required by the statute does not necessarily lead to the conclusion that Countrywide was unaware that the Garrs were requesting a release under section 443.130. The Garrs also advised Countrywide, as required by the section 443.130.2, that they had enclosed money for the expense of filing and recording the deed of release. I would not conclude that Countrywide was confused by the Garrs' decision to enclose, as required by the statute, money for the filing and recording of the release.

Finally, the majority argues that the Garrs' letter did not cite, reprint or otherwise reference section 443.110. No case has ever held that a section 443.130 demand letter is effective only if the statute is cited, reprinted or referenced. The statute itself imposes no such requirement. All that is required is that the mortgagee be put on notice, via a demand letter, that the mortgagor is requesting a deed of release. As explained above, the Garrs' demand letter satisfied every statutory re-

quirement for a demand letter. Furthermore, banking corporations, as are other parties, are presumed to know the law. *Round Prairie Bank of Fillmore v. Downey,* 64 S.W.2d 701, 704 (Mo.App.1933); *Deal v. Bank of Smithville,* 52 S.W.2d 201, 205 (Mo.App.1932). Concluding that a sophisticated mortgage company is not on notice because a customer's demand letter fails to cite or reprint a copy of the statute being invoked indulges an unreasonable assumption that institutional lenders are utterly unaware of their statutory obligations unless advised by their customers.

The demand letter is valid. It is undisputed that Countrywide failed to provide a deed of release within fifteen days. As stated in section 443.130.1 and found by the trial court, the Garrs are entitled absolutely to ten percent upon the amount of the security instrument. I would affirm.