Rodney and Diane **GLASS**, Respondents,

v.

**FIRST NATIONAL BANK OF ST. LOUIS**, Appellant.

No. SC 87244.

Supreme Court of Missouri, En Banc.

May 16, 2006.

Rehearing Denied June 13, 2006.

Donald L. O'Keefe, Ann E. Ahrens, St. Louis, for Appellant.

Jennie B. Wynne, John W. Rourke, St. Louis, for Respondents.

Jay A. Summerville, Jeffery T. McPherson, Armstrong Teasdale LLP, St. Louis, Wade L. Nash, Jefferson City, for Amicus Curiae Missouri Bankers Association.

RONNIE L. WHITE, Judge.

## I.

First National Bank of St. Louis appeals from the trial court's grant of summary judgment in favor of Rodney and Diane Glass. The judgment awarded damages pursuant to section 443.130, RSMo 2000, for First National's failure to timely provide a sufficient deed of release on a mortgage that was satisfied.[1] This Court has jurisdiction. Mo. Const. article V, sec. 10. The judgment of the trial court is affirmed.

## II.

On December 21, 1999, the Glasses executed a deed of trust in favor of First National for the purchase of their home. On June 13, 2001, the Glasses satisfied the mortgage when they refinanced the loan with a different mortgage company. On July 24, 2001, First National's loan servicing center mailed the Glasses a letter acknowledging that the loan was paid in full.

On or about August 3, 2001, the Glasses mailed an undated demand letter by certified mail to First National requesting a deed of release. The letter included proof of satisfaction of the loan and a check to cover the cost of the recording fees for the deed of release. On August 6, 2001, First National received the letter and one of its employees signed the return receipt. First National's loan servicing center could not confirm the date that deed of release was sent to the recorder, but testimony from one of their employees indicated that it was "probably" sent the week of June 19, 2001. The deed of release, however, was not recorded until October 9, 2001 (64 days post demand), and the Glasses were not tendered a copy of the deed until November 13, 2001 (99 days post demand).

The Glasses filed suit against First National seeking penalties for its failure to provide a timely deed of release pursuant to section 433.130. The Glasses also filed claims for invasion of privacy, unreasonable publicity of another's private life, interference with prospective advantage, punitive damages and attorneys fees. The trial court granted summary judgment in favor of the Glasses on the claim that First National failed to provide a timely deed of release and awarded them ten percent of

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

the amount of the deed of trust, the statutorily prescribed penalty. The trial court granted summary judgment to First National on the remainder of the Glasses' claims. First National appeals.

### III.

■■■ Appeal from a grant of summary judgment is essentially reviewed *de novo*.[2] The Court reviews the record in the light most favorable to the party against whom judgment was entered and accords the non-movant the benefit of all reasonable inferences from the record.[3] "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion."[4] "The propriety of summary judgment is purely an issue of law."[5]

Section 443.130 is an "enforcement mechanism for section 443.060.01 . . . which requires a mortgagee to deliver a 'sufficient deed of release of the security instrument' upon satisfaction of the instrument."[6] Section 443.130 provides:

1. If any such person, thus receiving satisfaction, does not, within fifteen business days after request and tender of costs, deliver to the person making satisfaction a sufficient deed of release, such person shall forfeit to the party aggrieved ten percent upon the amount of the security instrument, absolutely, and any other damages such person may be able to prove such person has sustained,

to be recovered in any court of competent jurisdiction. A business day is any day except Saturday, Sunday and legal holidays.

2. To qualify under this section, the mortgagor shall provide the request in the form of a demand letter to the mortgagee, *cestui qui* trust, or assignee by certified mail, return receipt requested. The letter shall include good and sufficient evidence that the debt secured by the deed of trust was satisfied with good funds, and the expense of filing and recording the release was advanced.

3. In any action against such person who fails to release the lien as provided in subsection 1 of this section, the plaintiff, or his attorney, shall prove at trial that the plaintiff notified the holder of the note by certified mail, return receipt requested.[7]

■■■ Section 443.130 is "penal in nature, so it must be strictly construed."[8] Any demand letter "purporting to invoke section 443.130 should closely track the language of the statute to place the mortgagee on notice that the statutory demand is being made."[9] "While no particular language is specifically required to be included in the letter, the letter must somehow put the lender on notice that a demand is made under section 443.130."[10]

The letter mailed by the Glasses to First National stated:

---

**2.** *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). See also Rule 74.04.

**3.** *Id.*

**4.** *Id.*

**5.** *Id.*

**6.** *Garr v. Countrywide Home Loans, Inc.*, 137 S.W.3d 457, 460 (Mo. banc 2004).

**7.** Section 443.130. It should be noted that the statute was amended in 2004, changing, *inter alia*, the fifteen-day response time to forty-five days.

**8.** *Garr*, 137 S.W.3d at 460.

**9.** *Id.*

**10.** *Brown v. First Horizon Home Loan Corp.*, 150 S.W.3d 287, 288 (Mo. banc 2004).

Dear Sir/Madam:

Please consider this our demand letter and written request for a deed of release of the mortgage/deed of trust on our home at 12706 Wynfield Pines Court, Des Peres, Missouri 63131.

Our home was recently refinanced and your loan, which was secured by a mortgage/deed of trust on the above property, has been paid off and satisfied with good funds. Recognizing this, you acknowledged receipt of payment in full of our loan on June 13, 2001 in a letter dated July 24, 2001. A copy of such letter is enclosed. For your convenience, this loan was referenced as loan number 2010185700.

Enclosed please find a check in the amount of $24.00 as and for costs, including recording fees, for the filing and recordation of the deed of release. I have also enclosed evidence that the aforesaid mortgage/deed of trust has been paid off and the expense of filing and recording the release has been advanced.

I trust that this letter and the accompanying check will enable you to deliver the requested deed of release promptly. Thank you in advance for your cooperation.

■ None of the material facts are in dispute concerning the satisfaction of the loan, the contents of the demand letter, or the receipt of the letter and its enclosures. What First National argues is that the contents of the demand letter fail to sufficiently track the statutory language of section 443.130 so as to provide adequate notice of the demand. Specifically, First National complains that the demand letter failed to reference the section number of the statute or provide the deadline for providing a copy of the release or for recording the deed of release. First National also claims the Glasses lack standing because it claims that the new mortgage holder is the person who satisfied the loan. First National further argues that even if the Glasses had standing, and even if the demand letter was sufficient, that the Glasses failed to establish that they were prejudiced by not receiving a timely release.

The Glasses' letter identifies itself as being a demand letter and requests a deed of release. The letter identifies the subject property by address and the loan number of the mortgage. The letter highlights the attachments to the letter that provide good and sufficient evidence that the debt secured by the deed of trust was satisfied with good funds, including First National's own acknowledgement that the loan had been satisfied. In a separate paragraph, the letter references the inclusion of a check advancing the expense of filing and recording the release. In the exhibits to Glasses' summary judgment motion, they include proof that their demand letter was sent by certified mail and that the bank's representative signed the return receipt that was returned to the Glasses. The language in the demand recites some of the section's language almost verbatim.

■ The demand letter is not required to reference section 443.130 specifically or list the deadline for providing the former debtor with a copy of the release; nor must the Glasses establish that they suffered any prejudice to qualify for relief under the statute. There is also no prohibition placed on a debtor preventing refinancing by another lender as a means to satisfy the loan. The mortgage contract runs between First National and the Glasses. It was the Glasses who satisfied the loan obligation.

The dissenting opinion of Judge Price attempts to rewrite this Court's opinions in

*Garr v. Countrywide Home Loans, Inc.,* 137 S.W.3d 457 (Mo. banc 2004), and *Brown v. First Horizon Home Loan Corp.,* 150 S.W.3d 287 (Mo. banc 2004), by inventing additional requirements not present in section 443.130. The opinion then erroneously claims that this opinion overrules both *Garr* and *Brown sub silentio.*

Neither *Garr* nor *Brown* rewrote the statute to require specific mention of section 443.130 or the fifteen-day response deadline as the dissent alleges. Both opinions required that the demand *letter as a whole* place the lending institution on notice that a demand for a deed of release is being made under section 443.130.[11] In *Brown,* this Court made perfectly clear that: "While no particular language is specifically required to be included in the letter, the letter must *somehow* put the lender on notice that a demand is made under section 443.130." (Emphasis added).[12]

The demand letter in *Garr* was defective because it demanded an "immediate" deed of release and did not comport with the statutory language allowing for a fifteen business-day response time.[13] The demand letter in *Brown* failed to request the deed of release and merely demanded that release be made and recorded. Because the Browns failed to include any other language tracking section 443.130, their letter as a whole did not place their lender on notice that demand was being made under the statute.[14]

In contrast, the first sentence of the Glasses' letter clearly indicates that they are demanding and requesting the deed of release, i.e. the persons who should receive the release. The Glasses' letter also provides documentation establishing they have satisfied the loan, and section 443.130.1 requires the deed of release to be delivered to the person making satisfaction. The payment for recording the deed simply satisfies the additional requirement in section 441.130.2, and it is completely irrelevant to the requirement in section 443.130.1 that First National send the deed of release to the Glasses. Even if First National had recorded the deed of release within the statutory deadline, which it failed to do, that would not have excused its obligation to provide the Glasses with the deed as required by section 443.130.1. The Glasses' demand letter, as a whole, placed First National on notice without directly referencing the statute.[15]

▆▆▆▆ Section 443.130 was intentionally directed at financial institutions that fail to provide timely deeds of release, which explains the legislature's desire to create a penalty, even in absence of measurable damages. It is the dissent that misreads the spirit of this law, and its attempt at rewriting the statute is merely an attempt to legislate from the bench.

A sophisticated business entity, such as First National, would be placed on sufficient notice that a demand for a deed of release is being made when receiving a letter, such as the Glasses', that so closely tracks the statutory language of section 443.130. Indeed, First National conceded in oral argument that it was fully aware of section 443.130, and further conceded that the Glasses' letter was a demand letter.[16]

---

11. *Garr,* 137 S.W.3d at 460; *Brown,* 150 S.W.3d at 288.

12. *Brown,* 150 S.W.3d at 288.

13. *Garr,* 137 S.W.3d at 460.

14. *Brown,* 150 S.W.3d at 288.

15. *Garr,* 137 S.W.3d at 460.

16. Although it attempts to couch its argument as being in conformity with First National's, the dissenting opinion of Judge Lynch plays the role of advocate and puts forth an argument not offered by either party. The distinc-

First National simply failed to provide the Glasses with the properly demanded release within the proscribed time frame, and its arguments to the contrary are without merit.

■ First National also challenges the constitutionality of section 443.130, claiming that it violates due process, equal protection, unlawful takings, and the excessive fines clauses of the United States Constitution and the Missouri Constitution. This Court, in its prior decision in this same matter, declared that First National's constitutional arguments "are not real or substantial." [17] This Court will not review those arguments a second time because "[a] previous holding is the law of the case, precluding re-litigation of issues on remand and subsequent appeal." [18]

### IV.

The judgment of the trial court is affirmed.

WOLFF, C.J., LAURA DENVIR STITH, TEITELMAN and RUSSELL, JJ., concur.

PRICE, J., dissents in separate opinion filed; LYNCH, Sp.J., dissents in separate opinion filed.

LIMBAUGH, J., not participating.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I dissent. This case is controlled by *Garr v. Countrywide Home Loans, Inc.*, 137 S.W.3d 457 (Mo. banc 2004), and *Brown v. First Horizon Home Loan Corp.*,

150 S.W.3d 287 (Mo. banc 2004). In *Garr*, the Court said that because section 443.130 was "penal in nature" that any demand letter thereunder "should closely track the language of the statute to place the mortgagee on notice that the statutory demand is being made." *Id.* at 460. The letter the Garrs sent to Countrywide, in that case, stated:

> Dear Sir or Madam:
>
> On August 2, 2002, we closed on our Marlann Drive home. On August 8, 2002, I confirmed via the Countrywide Automated Customer Service Line that our loan with Countrywide Home Loans was paid in full on August 8, 2002 and that an escrow balance of $60.84 would be refunded to me. We still have not received a Deed of Release to release the lien against our personal residence at 1417 Marlann Drive, Des Peres, Missouri 63131.
>
> We are demanding immediate release of the Deed of Trust against our Marlann Drive property. Enclosed is a check payable to your institution in the sum of $230.00 to cover the costs of filing and recording the Deed of Release regarding the transaction. Please deliver in hand to me evidence of the release of the Deed of Trust. In the event the Deed of Release has already been sent, please return my check to above listed address.

This Court pointed out three failings in the letter sent by the Garrs.

First, the Garrs demanded an *"immediate* release" of the deed of trust, rather

---

tion this dissent attempts to make between what constitutes a demand versus a request, a distinction that the parties apparently felt had no merit, is little more than form over substance. The Glasses' letter more than adequately articulates the Glasses' formal legal claim to the deed and for First National to feign ignorance is incomprehensible.

**17.** *Glass v. First Nat. Bank of St. Louis, N.A.* 186 S.W.3d 766 (Mo. banc 2005).

**18.** *Williams v. Kimes,* 25 S.W.3d 150, 153–154 (Mo. banc 2000).

than allowing for fifteen business days on which Countrywide could respond as allowed under the statute. In addition, the Garrs demanded that Countrywide *record* the deed of release, which is another action not required by the statute. Finally, reading the Garr's letter as a whole, nothing places Countrywide on notice that the Garrs are making a demand under section 443.130, whether directly, by reprinting, citing, or referencing or otherwise.

*Id.* at 460.

In *Brown*, a similar letter was sent to First Horizon Home Loan. The letter sent by the Browns stated:

Dear Sir or Madam:

Demand is hereby made by Kevin S. and Melody L. Brown, that full and complete release be made for the land secured by Deed of Trust for the property located at 1115 Bliss, St. Louis, Mo., dated August 30, 2001 and recorded September 14, 2001. Property recorded in Book 13272 at page 700 of the St. Louis County, Missouri land records.

Certified funds, in the amount of $59,550.69 to pay the loan secured by the above referenced Deed of Trust in full, were disbursed on 03–03–03, Air Borne Express, tracking # 17284193953.

Also, enclosed please find a check in the amount of $26.00 for tender of recording fees for the Deed of Release.

I look forward to hearing from you.

This Court held that the letter sent by the Browns was also insufficient. The Court stated:

While no particular language is specifically required to be included in the letter, the letter must somehow put the lender on notice that a demand is made under section 443.130. The Brown's letter has neither a reference to section 443.130 nor the 15 business days Home Loan has to respond. The person making satisfaction is not identified. No demand is made that the release be given to the person making satisfaction rather than filing the release with the recorder of deeds. As in *Garr*, in this case the Brown's letter as a whole does not place Home Loan on notice that demand is made under section 443.130.

*Brown*, 150 S.W.3d at 288.

The letter the Glasses sent to First National, in this case, states:

Dear Sir/Madam:

Please consider this our demand letter and written request for a deed of release of the mortgage/deed of trust on our home at 12706 Wynfield Pines Court, Des Peres, Missouri 63131.

Our home was recently refinanced and your loan, which was secured by a mortgage/deed of trust on the above property, has been paid off and satisfied with good funds. Recognizing this, you acknowledged receipt of payment in full of our loan on June 13, 2001 in a letter dated July 24, 2001. A copy of such letter is enclosed. For your convenience, this loan was referenced as loan number 2010185700.

Enclosed please find a check in the amount of $24.00 as and for costs, including recording fees, for the filing and recordation of the deed of release. I have also enclosed evidence that the aforesaid mortgage/deed of trust has been paid off and the expense of filing and recording the release has been advanced.

I trust that this letter and the accompanying check will enable you to deliver the requested deed of release promptly. Thank you in advance for your cooperation.

For the same reasons that the letters in *Garr* and *Brown* were insufficient, this

letter sent by the Glasses is insufficient. First the letter does not put First National on notice that the demand is made under section 443.130. The letter has "neither a reference to section 443.130 nor the 15 business days" First National has to respond. *Brown,* 150 S.W.3d at 288. Second, "[t]he person making satisfaction is not identified." *Id.* Third, "No demand is made that the release be given to the person making satisfaction rather than filing the release with the recorder of deeds." *Id.* A cursory reading of this case, *Garr,* and *Brown* indicates that the majority has simply overruled *Garr* and *Brown* sub silentio and adopted instead the dissent written by Judge Teitelman in those cases.

The reason why the demand letter and the statute must both be read carefully is shown in this case. The letter asked "for a deed of release of the mortgagee/deed of trust on our home." The letter does not specify where the deed should be sent, but does give a direction for the bank to record the deed: "Enclosed please find a check in the amount of $24.00 as and for costs, including recording fees, for the filing and recordation of the deed of release."

Evidence was presented that the bank prepared and forwarded a deed of release to the St. Louis County recorder of deeds in late June or July of 2001, even before receiving the Glasses' demand letter. (It is not known why the deed of release was not recorded until October 9, 2001.) Having already forwarded a copy of the deed of release to the county recorder, the bank might well believe that no further action was requested by the letter. The Glasses did not ask for anything else or specify where the deed should be sent to satisfy the demand contained in the letter or indicate that the demand was actually a demand under section 443.130. In such a

situation, the imposition of a substantial penalty, when plaintiffs admittedly suffered no actual damages, neither furthers the letter nor the spirit of the law.

**GARY W. LYNCH, Special Judge, dissenting.**

I respectfully dissent.

Section 443.060.1 [1] requires that a mortgagee receiving full satisfaction of a security instrument "shall, at the *request* and cost of the person making the same, deliver to such person a sufficient deed of release of the security instrument[.]" (Emphasis added). This statute does not place any requirements upon the mortgagor regarding the nature or manner of making the *request.* An oral or written *request* made by the mortgagor, or someone acting on behalf of the mortgagor, triggers the legal obligation of the mortgagee to deliver a deed of release. Likewise, this statute places no time limit upon the mortgagee within which to deliver the deed of release, and no penalty is imposed should the mortgagee fail to deliver the deed of release as requested.

The right of the mortgagor, upon *request,* to be delivered a deed of release as mandated by section 443.060.1, is exercised and satisfied thousands of times each day in the usual and ordinary course of closing real estate transactions. Mortgagors personally, as well as in reliance upon their attorney, title company, escrow agent or new mortgagee advancing funds from new financing, formally and informally, make the *request* for delivery of a deed of release from a satisfied mortgagee. Typically, satisfied mortgagees routinely and promptly comply with such requests and the requirement of section 443.060.1 by executing a deed of release and forwarding the deed of release to the appropriate land

1. All statutory references are to RSMo 2000 unless otherwise noted.

recordation office. Upon recordation, the deed of release is routinely sent to the mortgagor. Without this type of typical and routine processing, real estate commerce would grind to a virtual halt. Unfortunately, not every real estate transaction concludes in this typical, ordinary and routine manner.

Section 443.130, as the "enforcement mechanism for section 443.060.1," was enacted to address the atypical real estate transaction in which, for one reason or another, a deed of release is not, or is not anticipated to be, promptly forthcoming from a satisfied mortgagee. *Garr v. Countywide Home Loans, Inc.*, 137 S.W.3d 457, 460 (Mo. banc 2004). This statute expands the mortgagor's right to receive a deed of release from the satisfied mortgagee as mandated by section 443.060.1, by placing a time limit of "within fifteen business days after *request*" within which the mortgagee must deliver the deed of release or pay a penalty to the mortgagor. Section 443.130.1 (emphasis added). If a mortgagor must take affirmative action, by making a *request*, to invoke the singular right to receive a deed of release as mandated by section 443.060.1, how then does a mortgagor assert the expanded right under section 443.130.1 to receive a deed of release within fifteen business days after making the *request* and, in default thereof, be qualified to payment of a penalty from the mortgagee?

Subsection 2 of section 443.130 places four requirements upon the mortgagor to "qualify under this section." First, the mortgagor must make a *request* for delivery of the deed of release. This requirement is identical to the *request* required to trigger the provisions of section 443.060.1. Without such a *request*, neither section 443.060.1 nor section 443.130 is operative. Second, the mortgagor "shall provide the *request* in the form of a *demand* letter to

the mortgagee." Section 443.130.2 (emphasis added). Third, the *demand* letter must be provided to the mortgagee by certified mail, return receipt requested. *Id.* Fourth, the letter shall include evidence that the debt was satisfied and that the recording expense of the deed of release had been advanced. *Id.* The failure of the majority opinion to address the second requirement—that the request be provided in the form of a *demand* letter—gives rise to this dissent.

First National argues that "the Glass letter is insufficient to invoke the penalty in section 443.130," in that it "does not reference section 443.130 and does not request a deed of release within 15 business days." An analysis of the wording used in this statute demonstrates that this is a meritorious argument.

The majority opinion's labeling of the letter mailed by the Glasses to First National as a "demand letter" assumes, without any discussion or analysis, a determination that it meets the requirements of a *demand* letter under section 443.130.2. This assumption and determination essentially strike the word "demand" from the statute and gloss over the holding of this Court in *Garr;* that "any demand letter purporting to invoke section 443.130 should closely track the language of the statute to place the mortgagee on notice that the statutory *demand* is being made." *Garr,* 137 S.W.3d at 460 (emphasis added).

What is a *demand* letter which allows a mortgagor "to qualify under this section" as required by section 443.130.2? The common and ordinary dictionary meaning of "demand" is "to lay formal legal claim to." THE RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 2ND ED. (2001). This definition is consistent with the legal definition of a "demand letter," which is: "A letter by which one party explains its legal position in a dispute and requests that the

recipient take some action, or else risk being sued." BLACK'S LAW DICTIONARY 8TH ED. (2004). If the majority contends that a letter is a *demand* letter simply because it is labeled "demand letter," such a contention would elevate form over substance. The substance of the letter must be analyzed to determine what action, if anything, the claimant is demanding or laying "formal legal claim to."

The only claims or requests for action made by the Glasses in their letter to First National are: "Please consider this our demand letter and written request for a deed of release[,]" and "I trust that this letter and the accompanying check will enable you to deliver the *requested* deed of release promptly." (Emphasis added). Such a claim or *request* for action by the mortgagor is required to invoke the mortgagor's right to receive a deed of release under section 443.060 *and* under section 443.130. How is the mortgagee to differentiate whether the mortgagor's requested action is demanded under the former or the latter statute? The answer is in whether the mortgagor's letter demands, lays formal legal claim to, or requests some other action be taken by the mortgagee—an action which is not required by the former but is required by the latter.

Section 443.130.1 gives the mortgagor the additional right to have the deed of release delivered within fifteen business days after the *request* or receive a penalty payment from the mortgagee. Therefore,

under this statute, the additional action the mortgagor must lay "formal legal claim to" or demand by letter to the mortgagee, is the delivery of a deed of release *within the specified time period* or *receive the payment of a penalty*. Any letter that does not demand, "lay formal legal claim to" or request the action of delivering the deed of release within such time period, payment of a penalty, or otherwise place the mortgagee on notice that the mortgagor is laying claim to such additional right as given by section 443.130.1, cannot be a *demand* letter as required by section 443.130.2.[2] Without the required demand letter, the mortgagor is not qualified to claim the penalty provided in the statute. Section 443.130.2.

The legislature clearly intended to give meaning to the word "demand" in the first sentence of section 443.130.2, because the following sentence begins: "The *letter* shall include. . . ." (Emphasis added). The included items—evidence that the debt was satisfied and that expenses had been advanced—are required to be included in the "letter" and are not referenced in relationship to the "demand" aspect of the letter. The requirement for their inclusion in the "letter" does not satisfy or address the "demand" component of the "letter" as required in the first sentence. Therefore, closely tracking the language of the statute of this inclusion requirement as set forth in the second sentence of section 443.130.2 in no way supports a "demand," as speci-

---

2. The majority opinion asserts that "Section 443.130 was intentionally directed at financial institutions that fail to provide timely deeds of release[.]" However, it is equally applicable to a mother and father that cash in their life savings to finance a home purchase for their daughter and son-in-law who then, following the daughter's divorce and a refinance, find themselves holding a letter from their ex-son-in-law that, as the majority characterizes the Glasses' letter, "identifies itself as being a demand letter and requests a deed

of release." Would they be placed on notice that the "demand" by the ex-son-in-law includes the delivery of the requested deed of release within fifteen days or they would owe him a ten percent penalty pursuant to Section 443.130? If such a letter would not place mom and pop on notice, then, likewise, it cannot be held to place a financial institution or a "sophisticated business entity" on notice. Section 443.130 makes no distinction in the level of business expertise to be attributed to any particular mortgagee.

fied and required in the first sentence as it relates to the additional right conferred upon the mortgagor in section 443.130.1.

The legislature's inclusion of the word "demand" following the word "request" and before the word "letter" in section 443.130.2 indicates that something more than simply putting the *request* in writing or labeling the *request* as a "demand" is required to qualify for imposition of the statutory penalty. Otherwise, why mention and require the *request* in the first instance? If the intended requirement was to "demand" delivery of a deed of release by letter, the legislature would have so provided and would not have required a "request" and a "demand" by letter. This Court is required to construe this penal statute strictly. *Garr,* 137 S.W.3d at 460. This Court also must attribute meaning to every word in the statute. *Be–Mac Transport Co. v. State Tax Com.,* 725 S.W.2d 599, 600 (Mo.1987). These two rules of statutory construction become particularly critical when two statutes—one without a penalty (section 443.060) and the other penal (section 443.130)—mandate identical actions, *i.e.,* delivery of a deed of release upon *request.* The additional requirement is the "demand" that the mortgagee deliver a deed of release within the required time period or, in default of such delivery, pay a penalty as provided in the statute. Without attributing this meaning to the word "demand," the legislature would have simply omitted the word from the statute. Regrettably, the majority opinion takes this action for the legislature.

Because the Glasses' letter to First National fails to demand compliance within the time period or pay a penalty as provided in section 443.130.1, or in any other way indicates that they are demanding compliance with this additional right granted them by this statute, it is not a *demand* letter as required by section 443.130.2. "While no particular language is specifically required to be included in the letter, the letter must somehow put the lender on notice that a demand is made under section 443.130." *Brown v. First Horizon Home Loan Corp.,* 150 S.W.3d 287, 288 (Mo. banc 2004). Failure to comply with the *demand* letter requirement of section 443.130.2 disqualifies the Glasses from entitlement to collect any penalty under this statute from First National.

I would reverse the grant of summary judgment in favor of the Glasses.